L. GOETHAL v. W. M. REED.

Decided April 13, 1904.

**1.—Public Land—Application to Purchase—Name—Identity.**

The application of plaintiff "W. M. Read" to purchase public school land was not invalidated by the fact that it was made under the name "Wm. Reed," where the evidence identified plaintiff as the applicant.

**2.—School Land—Purchase for a Home—Affidavit.**

An affidavit for purchase of school land for a home was not invalid because it omitted the word "land," where other parts of the application identified the section in question as the home desired.

**3.—Evidence—Intention of Purchaser.**

On the issue of a purchaser's intention in good faith to buy school land for a home, the purchaser may himself testify to such intention and to the absence of collusion with others.

**4.—School Land—Purchase for Home.**

An application to purchase together several sections of school land, with affidavit that applicant is an actual settler thereon, but without designating, except by a memorandum in pencil on the application, "settlement is on number 4," gives the applicant no right, being insufficient to show which was purchased as the home and which as additional sections.

ON REHEARING.

**5.—School Land—Application to Purchase.**

An application to purchase more sections of agricultural land than the applicant was entitled to buy gave no right to him as against a subsequent applicant, and it rested upon him to show that an amendment striking out one of the sections and reducing the amount to such as he was entitled to, purchase was made before the application of such subsequent purchaser to buy.

Appeal from the District Court of Concho. Tried below before Hon. John W. Goodwin.

*J. W. Hill, G. H. Garland,* and *John I. Guion,* for appellant.

*Jenkins & McCartney,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by appellee in trespass to try title to recover section 6, located by virtue of certificates issued to the Southern Pacific Railway Company, situated in Concho County. Defendants Loomis and Wilson disclaimed.

The appellant Goethal filed an answer containing general and special demurrers, general denial and plea of not guilty, and a cross-action to recover section 6 in district 11, in the name of the Southern Pacific Railway Company, containing 640 acres, situated in Concho County. Verdict and judgment were in favor of the appellee for the land in controversy.

We find the following facts: On August 23, 1897, section 6, the survey in controversy, was school land, situated in Concho County and was classified as dry agricultural land, valued at $1.50 per acre, and was then on the market for sale under that classification. Sections 2, 4 and 8 in district 11, Southern Pacific Railway Company, were school lands located in Concho County, and were at this time classified as dry

agricultural lands, valued at $1.50 per acre, which surveys were also properly on the market for sale. On the 23d day of August, 1897, the plaintiff made his application in due form, as required by law, to purchase section No. 6 in controversy, which application describes the land as section 6, block 11, Southern Pacific Railway Company, 640 acres, price per acre, $1.50, and is stated in the application as classified as dry agricultural land. The application states that the applicant Wm. Read, who the evidence shows to be the plaintiff in this cause, desires to purchase the land for a home, and that he has in good faith settled thereon, and was at that time a bona fide settler thereon, and that he was not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in his purchase. His application was sworn to, as required by law; and the evidence shows that he executed the obligations and made the payments, as required by law. On the back of the application appears an indorsement to the effect that this is the application of William · Read to purchase section 6, granted to the Southern Pacific Railway Company in Concho County, and was received in the land office August 26, 1897, with the word "Rejected" indorsed thereon. Plaintiff also introduces certificates of first payment to the Treasurer of the State, as required by law.

Plaintiff, for the purpose of showing why his application was rejected, introduced in evidence the application of the appellant, made on August 23, 1897, and filed in the Land Office August 24th, and awarded to appellant October 21, 1897, which application is as follows:

"Application and Affidavit to Purchase as an Actual Settler: Austin, Texas, Aug. 23, 1897.—Hon. Andrew J. Baker, Commissioner of the General Land Office: I hereby apply to purchase under the provisions of 'An act to provide for the sale of all lands heretofore or hereafter surveyed and set apart for the benefit of the public free schools and the several asylums, and the lease of such lands, and of the public lands of the State, and the patenting of any part of the said lands for church, cemetery or schoolhouse sites, and to prevent the free use, occupancy, unlawful inclosure or unlawful appropriation of such lands, and to prescribe and provide adequate penalties therefor; as provided for in title 87, chapter 12a of the Revised Civil Statutes of 1895, and the amendments thereto, by the Act of May 19, 1897, the following land situated in Concho County, Texas, and about eight miles (give course) S. W. from county site, agreeing to pay for the same the price per acre below specified:

| Section | Township | Block | Certificate | Guarantee | Acres | Price per acre | Classification, |
|---------|----------|-------|-------------|-----------|-------|----------------|------------------|
| 4 | ....... | 11 | ........ | S. P. R. R. Co. | 640 | $1.50 | Agricultural. |
| 6 | ....... | 11 | ........ | S. P. R. R. Co. | 640 | $1.50 · | Agricultural. |
| 2 | ...... | 11 | ........ | S. P. R. R. Co. | 640 | $1.50 | Agricultural. |

"Settlement is on No. 4 [this in pencil].

"For the purpose of securing the said land, and of complying with the law regulating the same, I hereby make and subscribe to the following oath, to wit: I, Louis Goethal, do solemnly swear that I desire to purchase said land for a home, and that I have in good faith settled thereon, and am now a bona fide settler thereon. I further swear that I am not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in this purchase save myself; that I am over eighteen years of age; that my postoffice address is Paint Rock, in Concho County, State of Texas.

(Signed)                              "LOUIS GOETHAL, Applicant.

"Subscribed and sworn to before me, this 24th day of August, 1897.

[Seal]                                      "R. M. ARMSTRONG,

"Notary Public, Travis County, Texas."

Plaintiff also introduced in evidence the obligation executed by the defendant.

There is evidence in the record which shows that the appellee, the plaintiff below, was an actual settler on the land at the time that he applied to purchase the same, and that the facts stated in his application were true.

Appellant's first assignment of error complains of the action of the court in admitting in evidence the application of the plaintiff to purchase the land, because the suit was brought by W. M. Read, and the application was in the name of Wm. Reed. The evidence in the record identifies the plaintiff in this case as the same party who applied to purchase the land in controversy. He brought his suit in the name of W. M. Read, but we are of the opinion that Reed and Read are idem sonans.

The third assignment of error complains of the action of the court in admitting the plaintiff's application to purchase, because the affidavit accompanying the same does not show that the applicant desires to purchase the land for a home. It does in one place omit the word "land," but from the other parts of the application it clearly appears that the plaintiff desires to purchase the survey in controversy, which necessarily embraces the idea that it was land. He expressly stated that he desired it for a home.

We are of the opinion that the evidence that the court admitted over the objection of appellant, as complained of in the fourth, fifth and sixth assignments of error, was admissible. It was proper for the plaintiff to state that he desired to purchase the land in controversy as a home for himself, and whether his intention at the time of the application was in good faith to acquire it as a home, and whether or not he was acting in collusion with any other person or corporation in the purchase of the land. These were facts peculiarly within his knowl-

edge, and it was proper for the court to permit him to testify thereto.

Our findings of fact dispose of appellant's tenth assignment of error. We are of the opinion that there is enough evidence in the record bearing on the question of settlement to show that the plaintiff was an actual settler on the land at the time that he applied to purchase the same.

Appellant's seventh and eighth assignments of error complain of the action of the court in refusing to admit in evidence his application, affidavit and obligation to purchase the land in controversy. Appellant's application has been set out in our findings of fact. In the appellant's application there are four sections applied for, Nos. 4, 6, 2 and 8. No. 8 seems to be erased, but when this occurred the testimony does not show. But if we consider that it was properly erased, it leaves the application calling for three sections of agricultural land, which the appellant states he desires to purchase. There is written below this description the words, "Settlement is on No. 4." Whether that means that he was an actual settler on section 4, the application leaves in doubt, as the mere expression "settlement" is not sufficient to indicate that that was his home section, and that he then at the time of the application was actually residing upon that section. Mahoney v. Tubbs, 8 Texas Ct. Rep., 887. The application states that he desires to purchase the land for a home, and that he has in good faith settled thereon, and that he was at the time that the application was made a bona fide settler thereon. He could not purchase under the law all four or three agricultural sections as a home, and it was physically impossible for him to be a bona fide settler on all of the sections. The law at the time that the application was made did not allow a purchaser to acquire more than two agricultural sections. The application states that the applicant desires to purchase three or four agricultural sections, and it is impossible to determine from the face of the application which one of the surveys he was at the time of the application a bona fide settler on, using the same as a home.

It was not contemplated by the law that the application should embrace more sections of the class of land than the applicant was entitled to purchase, and that he could thereafter make a selection of the number allowed by law. Such a course, if recognized, would have the effect of taking more land off the market from the date of the application than the applicant was entitled to purchase, and thereby prevent other applicants, who might desire to purchase the same class of land, from applying therefor.

We find no error in the ruling of the court in refusing to admit in evidence the appellant's application. A proper application was the basis of his title, and if that was properly excluded it follows that no error was committed in refusing to permit him to offer evidence of his obligation and evidence of payment and settlement.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

## OPINION ON REHEARING.

FISHER, CHIEF JUSTICE.—In the original opinion we stated that section 2, with the other lands in appellant's application to purchase, was classified as dry agricultural land. In making this statement we were misled by the description and classification given in his application to purchase. All of the four sections there described were in the application classified as dry agricultural lands.

Appellant in his motion for rehearing and in his request for additional findings of fact states that such classification, as relates to section 2, was a mistake, and we are inclined to the view that this was the case. It appears from the evidence that at the time that the appellant and the appellee both filed their applications to purchase on August 23, 1897, section 2 was classified as dry grazing land, and appraised at $1 per acre. The other three surveys—that is, 4, 6 and 8—were classified as dry agricultural lands, as stated in our original opinion. Therefore our findings of fact will be corrected as above suggested.

We also find from evidence stated in the record, which is incorporated in one of appellant's bills of exception, and which evidence the appellant in his motion for rehearing requests that we consider, that the application made by the appellant was prepared by his attorney under a suggestion from the Commissioner of the Land Office that all four sections could be embraced in one application, and that it was only necessary to designate upon the application which of the four sections was the home section; and that in accordance with this suggestion the appellant, through his attorney, indorsed on the application the words: "Settlement is on No. 4."

We also find from the evidence as stated in appellant's bill of exception as heretofore referred to, that at the time that appellant's application was filed in the Land Office for sections 4, 6, 2 and 8, there was no erasure or marking out of the last named section; and the evidence in the record does not definitely show when this erasure was made in appellant's application, but upon the back of this application appears an indorsement to the effect that sections 4, 6, 2 and 8 were applied for; and is the further indorsement that the application was received in the Land Office August 24, 1897, and awarded October 21, 1897. This indorsement is signed by the Commissioner of the Land Office.

On September 30, 1897, the appellant by a separate application applied again to purchase section 8, which was then classified as dry grazing lands; and that this survey was awarded to him on October 21, 1897, the same day that the award was made of sections 4, 6 and 2. This last application states that it is an amendment to the application previously made by the appellant, that is the application of date August 23, 1897. The date of the making of this last application, which was September 30th, seems to be the time in which the original application was amended, and we take this to mean, where there is no other evidence to the contrary, that the change or erasure made in the original appli-

35 Civ—30

cation by drawing a line through section 8 was made on the day that this last application was filed. At the time of the original application, all of the four sections as applied for by appellant were classified as dry agricultural lands except section 2, and such was the classification at the time that appellant's original application was filed in the General Land Office, and at the time that the appellee applied to purchase and filed his application for section 6, the survey in controversy.

Thus it is seen that if we eliminate section 2, or in other words, regard it as classified as dry grazing land, the application of the appellant as actually filed in the Land Office embraces three surveys of agricultural land which he applied to purchase, when the law then existing did not authorize a purchase of more than two agricultural sections.

We may admit the rule to be that the burden rests upon the one asserting under the subsequent application to establish the facts that show the superiority of his right; or, in other words, that the prior applicant acquired no right; but in this case we are of the opinion that the appellee has discharged this burden, for the reason that when the appellant filed an application in the Land Office to purchase three agricultural surveys, and the application was in that condition when actually received and filed by the Commissioner, its invalidity is apparent, and the one desiring to subsequently purchase could act upon the condition of the application as there found to be filed, and if then discovered to be invalid, his superior right would be established. The original application being invalid when filed in the Land Office the burden rested upon the appellant to show the facts and circumstances that would relieve it of its invalidity prior to the time that the appellee applied to purchase.

No attempt was made by the appellant to show that the erasure of section 8 occurred or was made under his authority prior to the time that the appellee filed his application in the Land Office; but as said before, on the contrary, it reasonably appears that such change was not made until the purported amended application was filed by the appellant on the 30th of September, which was a time subsequent to the making and filing in the Land Office of the appellee's application.

We reiterate the doctrine announced in the original opinion to the effect that it is not the policy of the law to recognize the validity of an application which embraces more sections of agricultural land than the applicant would be entitled to purchase. Such an application, if recognized, would have the effect of taking such land off the market, and thereby suspend the right of other qualified purchasers to acquire any part of such lands to such a time as the original applicant should see fit to correct or erase from his original application some of the surveys classed as agricultural, and thereby reduce it to the number which he is authorized under the law to purchase.

The motion for rehearing is overruled, and the request for additional findings of fact is complied with to the extent stated in this opinion.

*Overruled.*